IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

**RJ MACHINE COMPANY, INC.,**
Plaintiff,

-vs-                                                                                    Case No. A-13-CA-579-SS

**CANADA PIPELINE ACCESSORIES CO. LTD.,**
Defendant.

# ORDER

BE IT REMEMBERED on the 20th day of August 2015, the Court held an evidentiary hearing in the above-styled cause, and the parties appeared in person and through counsel. Before the Court are Plaintiff RJ Machine Company, Inc. (RJ Machine)'s Motion to Enforce Violation of Confidentiality and Protective Order [#133], RJ Machine's Supplement [#136], Defendant Canada Pipeline Accessories Co. Ltd. (CPA)'s Response [#136], and CPA's Hearing Brief [#149]; and Third Party Advance Fabrication & Measurement, LLC's Motion to Quash [#150]. Having reviewed the documents, the relevant law, the file as a whole, the parties' oral arguments, and the evidentiary record established at the hearing, the Court now enters the following opinion and orders DENYING the motion.

## Background

On July 10, 2013, RJ Machine filed this lawsuit against CPA, alleging the following four counts: (1) violations of 15 U.S.C. § 2 (Sherman Act); (2) violations of the Texas Free Enterprise and Antitrust Act of 1983; (3) unfair competition and unfair trade practices; and asking for (4) a declaratory judgment. *Id.* [#1] ¶¶ 41–64. The Court granted CPA's motion to dismiss counts

(1)–(3), leaving only the declaratory judgment action. *See* Order of Nov. 22, 2013 [#35]. CPA filed an answer and also asserted a number of counterclaims. *See* Answer & Countercl. [#36].

On September 10, 2014, CPA filed a Covenant Not to Sue [#48]. On September 29, 2014, CPA filed an Amended Covenant Not to Sue [#61]. On September 30, 2014, CPA filed a Second Amended Covenant Not to Sue [#65] (the Covenant).

The parties filed a Joint Motion for Entry of Protective Order [#70], which the Court granted on October 23, 2014 [#73] (the Protective Order).

On December 15, 2014, CPA filed an Amended Answer in which it removed all of its counterclaims. *See* Am. Answer [#77]. At that time, the only live claim in this case was RJ Machine's declaratory judgment action. While RJ Machine originally sought a variety of declarations, *see* Compl. [#1] at 9–11, the only remaining disputed issue in the case, distilled to its core, was whether CPA had legally protectable trademarks in "CPA 50E" and "50E."

On June 1–2, 2015, the Court held a bench trial on the trademark issues, and on July 15, 2015, the Court entered Findings of Fact and Conclusions of Law, holding RJ Machine was entitled to none of the relief requested in its declaratory judgment. *See* Findings of Fact & Conclusions of Law [#138]. Specifically, RJ Machine failed to carry its burden and show CPA had invalid trademarks in either "CPA 50E" or "50E." As such, RJ Machine is not permitted to use those marks on its flow conditioner product. On that same day, the Court entered a judgment, and no appeal was filed. *See* Judgment [#139].

On July 8, 2015, RJ Machine filed a Motion to Enforce Violation of Confidentiality and Protective Order. *See* Mot. Enforce [#133]. RJ Machine argues CPA violated the Protective Order when on or about July 7, 2015, it served Advance Fabrication and Measurement, LLC (Advance),

one of RJ Machine's customers, with a Verified Petition for Deposition and Document Production to investigate potential claims under Rules 202 and 205 of the Texas Rules of Civil Procedure. RJ Machine filed a Supplement to its motion to enforce, informing the Court CPA had issued a similar Verified Petition for Deposition and Document Production to another one of RJ Machine's customers, Flozone Measurement, Ltd. (Flozone). *See* Supplement [#136].

RJ Machine's basic position is that in connection with this litigation, and pursuant to the Protective Order, RJ Machine produced confidential documents relating to its sales to numerous customers, including Advance and Flozone. RJ Machine argues CPA, based on its review of this confidential information, initiated the Rule 202 proceedings against Advance and Flozone. In RJ Machine's view, CPA has violated the Protective Order by using that information outside the confines of this litigation in the form of the Rule 202 proceedings.

On August 5, 2015, the Court held a hearing and heard attorney argument on RJ Machine's motion to enforce. During the hearing, it became apparent RJ Machine was not only arguing CPA had violated the Protective Order but also that CPA had violated the Covenant. RJ Machine's position is that the Rule 202 proceedings amount to a threat of litigation against RJ Machine's customers and are not limited to activity after December 5, 2013, as required by the Covenant. After hearing argument, the Court ordered an evidentiary hearing to take place on August 20, 2015.

On August 20, 2015, the Court held an evidentiary hearing, and the Court heard testimony from: (1) Javier Martinez, a representative of Advance; (2) Chris Holcomb, a representative of Flozone; and (3) Dale Sawchuk, a representative of CPA. At the outset of the hearing, the Court addressed a motion to quash filed by Advance. *See* Mot. Quash [#150]. CPA had served Advance with a subpoena on August 14, 2015, commanding the custodian of records at Advance to testify at

the evidentiary hearing scheduled for August 20, 2015, and to collect and bring a host of documents to the hearing. While Advance filed the motion to quash on August 19, 2015, Advance's custodian of records, Holcomb, appeared at the hearing with counsel, and Holcomb brought with him the documents requested by the subpoena. Because Advance had complied with the subpoena, the motion to quash was moot. By agreement of Advance's counsel, the Court orally dismissed the motion to quash, and that dismissal is confirmed in this order.

## Analysis

### I. The Protective Order

To violate the Protective Order, CPA must have used Classified Information contrary to the Protective Order's restrictions. The Protective Order defines Classified Information as:

> any information of any type, kind, or character that is designated as "Confidential," "For Counsel Only", or "Attorneys Eyes Only" by any of the supplying or receiving persons, whether it be a document, information contained in a document, information revealed during a deposition, information revealed in an interrogatory answer, or otherwise.

Protective Order at 1. For documents provided by non-parties, the Protective Order states either the "producing person or any party" may designate the documents as Classified Information. *Id.* at 4. The Protective Order instructs "[a]ll Classified Information provided by any party or nonparty in the course of this litigation shall be used solely for the purpose of preparation, trial, and appeal of this litigation and for no other purpose, and shall not be disclosed except in accordance with the terms thereof." *Id.* at 3–4.

The Protective Order further defines Nonclassified Information to include information that "lawfully comes into the recipient's possession subsequent to the time of disclosure from another

source without restriction as to disclosure, provided such third party has the right to make the disclosure to the receiving party." *Id.* at 2.

Based on the record established at the evidentiary hearing, RJ Machine fails to show CPA used Classified Information as the basis for initiating the Rule 202 proceedings against Advance and Flozone. To the contrary, the evidence supports finding CPA relied on Nonclassified Information and information independently acquired (Independent Information) as the impetus for the Rule 202 petitions.

The only Confidential Information identified by RJ Machine that was supposedly used in violation of the Protective Order are RJ Machine's records concerning its sales to Advance and Flozone produced to CPA during discovery. *See* Pl.'s Hr'g Exs. 7, 8, 9 (sealed). Those spreadsheets, which are marked "Highly Confidential - Attorneys' Eyes Only," reflect sales volume to RJ Machine customers, including Advance and Flozone, covering roughly the time period from mid-2013 to February 2014. *Id.* RJ Machine produced those records to CPA on March 7, 2014. *See* Def.'s Hr'g Ex. 5 (email from RJ Machine's counsel to CPA's counsel with production attached). RJ Machine argues CPA reviewed these spreadsheets and determined Advance and Flozone were RJ Machine's two biggest customers. According to RJ Machine, that knowledge led CPA to file the Rule 202 petitions.

The evidence shows, however, CPA acquired information regarding sales from RJ Machine to Advance and Flozone directly from Advance and Flozone through subpoenas, and no party, including RJ Machine, ever took action to mark this information as "Confidential," "For Counsel Only," or "Attorneys Eyes Only." In November 2014, CPA issued subpoenas to Advance and Flozone. *See* Pl.'s Exs. 3 (subpoena and records produced by Advance) & 4 (subpoena and records

produced by Flozone). Advance's records cover roughly January to November 2014, and Flozone's records cover roughly September 2013 to November 2014. *Id.* The records are the actual purchase orders and invoices reflecting sales from RJ Machine to these two customers. *Id.* They are not marked "Confidential," "For Counsel Only," or "Attorneys Eyes Only," and there is no evidence in the record any party, including RJ Machine, took action to have them so designated. *See* Protective Order at 4 (providing that for documents produced by non-parties, either the "producing person or any party" may designate the documents as Classified Information). As such, the records are not "Classified Information" covered by the Protective Order. Instead, they qualify as Nonclassified Information pursuant to the Protective Order. *Id.* at 2 (stating Classified Information does not include information that "lawfully comes into the recipient's possession subsequent to the time of disclosure from another source without restriction as to disclosure, provided such third party has the right to make the disclosure to the receiving party").

While the sales records produced by RJ Machine to CPA cover a slightly different time frame than the purchase orders and invoices produced by Advance and Flozone to CPA, the time periods do overlap. The relevant point is CPA could have arrived at the same conclusion that Advance and Flozone were two of RJ Machine's biggest customers by looking at either RJ Machine's production of Classified Information or Advance and Flozone's production of Nonclassified Information. Accordingly, RJ Machine's contention that CPA relied on the Classified Information produced by RJ Machine to CPA as the basis for asserting the Rule 202 petitions is unsupported by the record.

Moreover, CPA introduced evidence demonstrating it was suspicious of the relationship between RJ Machine and these two customers based on Independent Information. Dale Sawchuk testified regarding the significant amount of sales occurring between CPA and both Advance and

Flozone in 2012 and 2013. He testified that sales to Advance in 2012 were approximately $260,000, and sales to Flozone in 2012 were approximately $160,000. He further stated sales to Advance in 2013 were approximately $340,000, and sales to Flozone in 2013 were approximately $250,000. In late 2013, however, he and others at CPA began to notice a sharp decrease in sales to these two customers. CPA offered an internal email from November 2013 in which one CPA employee informs another: "[O]rders from flozone dried up, we should investigate." Def.'s Hr'g Ex. 7. Sawchuk testified that CPA representatives went to the Midland/Odessa region—where both Advance and Flozone are located—in February 2014 to have personal meetings with these customers and to investigate why there had been a decrease in sales. Javier Martinez confirmed such a meeting occurred with Advance.

Then, in March 2014, after these meetings, RJ Machine produced to CPA, as part of this litigation, its spreadsheets concerning sales to Advance and Flozone under the Protective Order. And, as already discussed, CPA acquired essentially the same information directly from Advance and Flozone through the November 2014 subpoenas. Sawchuk further testified that he had conversations with representatives of both Advance and Flozone, in which these representatives either explicitly told him they were purchasing RJ Machine's flow conditioner product or told him information from which he could easily conclude they were purchasing RJ Machine's product.

In sum, the record reflects CPA acquired a variety of Nonclassified Information and Independent Information from different sources from late 2013 to the spring 2015 leading it to believe it was losing the sales of Advance and Flozone to RJ Machine. Because the only Classified Information RJ Machine argues CPA used in violation of the Protective Order were spreadsheets reflecting RJ Machine's sales to Advance and Flozone, RJ Machine fails to show CPA used or relied

on that Classified Information in deciding to initiate the Rule 202 proceedings against Advance and Flozone. Therefore, the Court DENIES RJ Machine's motion to enforce a violation of the Protective Order and the relief requested therein.

## II. The Covenant

While only formally moving to enforce the Protective Order, RJ Machine has additionally argued that CPA violated the Covenant by bringing the Rule 202 proceedings against Advance and Flozone. In the Covenant, CPA represented, in relevant part:

> Given [RJ Machine]'s express representation that [RJ Machine] did not commercially use the Trademarks or either Trademark on or before December 5, 2013, CPA further unconditionally and irrevocably covenants to refrain from making any claim(s) or demand(s) against [RJ Machine] or any of its affiliates or assigns, including distributors and employees of such entities and all customers thereof, on account of any cause of action occurring on or before December 5, 2013, for trademark infringement, trademark dilution, or unfair competition, under state or federal statutory or common law, relating to the Trademarks or either trademark.

*Id.*

Rule 202 permits pre-suit depositions in certain limited circumstances. Specifically, Rule 202 provides a person may petition the state court for an order authorizing "the taking of a deposition on oral examination on written questions" for one of two reasons: "(a) to perpetuate or obtain the person's own testimony or that of any other person for use in an anticipated lawsuit; or (b) to investigate a potential claim or suit." TEX. R. CIV. P. 202.1(a), (b). CPA represents it filed the Rule 202 petitions "solely for the latter purpose." Hr'g Br. [#149-1] Ex. A at 2 n.1. The language of the Rule 202 petitions is consistent with that representation. *See* Pl.'s Hr'g Exs. 5 & 6 (the verified petitions to Advance and Flozone, both indicating CPA seeks information only to "investigate

potential claims" and that CPA would "consider filing a lawsuit" if "palming off has occurred or is now occurring").

Courts hold consistently that a Rule 202 petition is a request for discovery, not a claim, demand, or cause of action. *See Texas v. Real Parties in Interest*, 259 F.3d 387, 394 (5th Cir. 2001) (describing a Rule 202 proceeding as "only an investigatory tool" for potential claims that may or may not ultimately result in a cause of action); *see also In re Valerus Compression Servs., LP*, No. 14-14-00019-CV, 2015 WL 2169656, at *4 (Tex. App.—Houston [14th Dist.] May 7, 2015, not pet.) (McNally, J., concurring) ("A Rule 202 petition for pre-suit discovery is so distinct from a traditional lawsuit that the majority of Texas courts to consider the question hold that a Rule 202 proceeding may not be removed to a federal court."). The Austin Court of Appeals described a Rule 202 petition as:

> ultimately a petition that asserts no substantive claim or cause of action upon which relief can be granted. A successful rule 202 petitioner simply acquires the right to obtain discovery—discovery that may or may not lead to a claim or cause of action. . . . We cannot agree that a rule 202 petition is itself a 'suit,' . . . .

*Combs v. Tex. Civil Rights Project*, 410 S.W.3d 529, 534 (Tex. App.—Austin 2013, pet. denied).

The Covenant requires CPA not make any "claim" or "demand" against RJ Machine's customers on account of any cause of action occurring on or before December 5, 2013. In light of the above cited case law, the Court does not consider CPA's Rule 202 petitions to be a claim or demand on account of any cause of action. Rather, CPA is investigating potential causes of action through preliminary discovery.

In addition, while CPA's Rule 202 petitions asked for documents from "2013 to the present" and did not restrict the time frame to from "December 5, 2013 to the present," the Court does not

consider this wording a violation of the Covenant either. CPA persuasively argues discovery from before December 5, 2013, regarding potential causes of action for trademark infringement, trademark dilution, and unfair competition related to CPA's 50E or CPA 50E trademarks is pertinent to determining "when potential causes of action accrued, what acts led to the accrual, whether later violations were made intentionally or knowingly based on prior knowledge and prior acts, and whether parties not covered by the Covenant are involved." CPA's Hr'g Br. [#149] at 10. In a related vein, seeking discovery from before December 5, 2013, is different than asserting a cause of action that accrued before December 5, 2013. Through the Covenant, CPA agreed not to do the latter. To the extent there is any doubt, CPA "reconfirms that if CPA ever makes a claim against Flozone or Advance for trademark infringement, trademark dilution, or unfair competition related to CPA's 50E® or CPA 50E® trademarks, such cause will not have accrued before December 5, 2013." *Id.*

Finally, the Court notes the Covenant does not prohibit CPA from asserting causes of action other than trademark infringement, trademark dilution, and unfair competition that accrued before December 5, 2013. As such, CPA does not violate the Covenant when it seeks discovery to investigate those other potential causes of action.

## Conclusion

Accordingly,

IT IS ORDERED that Plaintiff RJ Machine Company, Inc.'s Motion to Enforce Violation of Confidentiality and Protective Order [#133] is DENIED;

IT IS FINALLY ORDERED that Third Party Advance Fabrication & Measurement, LLC's Motion to Quash [#150] is DISMISSED.

SIGNED this the 31st day of August 2015.

*Sam Sparks*
SAM SPARKS
UNITED STATES DISTRICT JUDGE